UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KIMBERLY HANDSHOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. |
| | ) | |
| DEXTER AXLE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

The Plaintiff, by counsel, alleges against the Defendant as follows:

1. The plaintiff is Kimberly Handshoe, a resident of Rome City, Indiana, and an employee of the Defendant at all material times to this Complaint.

2. The defendant is Dexter Axle Company, a company doing business at 500 South 7th Street, Albion, Indiana 46701. At all material times to this Complaint, the Defendant was an "employer" for the purposes of the Americans with Disabilities Act of 1990 (herein after ADA).

3. Plaintiff filed her original Charge of Discrimination (EEOC No. 470-2016-00178), on October 8, 2015, a copy of which is attached hereto, incorporated herein, and made a part hereof as Exhibit "A". The EEOC issued its Dismissal and Notice of Rights/Notice of Suit Rights on March 16, 2016 a copy of which is attached hereto and made a part hereof as Exhibit "B". All administrative remedies have been exhausted and all jurisdictional prerequisites have been met for the filing of this lawsuit.

1

4. Plaintiff was employed by Defendant for more than 18 years from on or about November 21, 1996 until her wrongful termination on or about April 29, 2015.

5. Plaintiff's husband was diagnosed with cancer in June 2013 and had chemotherapy and radiation prior to his November 2013 surgery. Because he was on Plaintiff's workplace health insurance, he was able to complete several rounds of radiation, chemotherapy, and surgery. In order to treat the aggressive cancer, Plaintiff's husband spent nearly fourteen days in the hospital and accumulated over two million dollars in associated medical bills.

6. Plaintiff was promoted to Supervisor by Dexter Axle on or about July 12, 2013. Defendant explained to Plaintiff that she would be trained for her new position on-the-job while serving as a supervisor.

7. Plaintiff performed her job duties to the reasonable expectations of Defendant.

8. On or about January 2015, Defendants changed, altered, and/or updated their previous policy regarding the consequences of an employee/supervisor's failure to follow either lock out/tag out ("LOTO") procedures or properly supervise a LOTO procedure. Plaintiff was not notified of this change.

9. Around March 2015, Plaintiff notified her direct supervisor that her husband was again experiencing severe medical problems, likely related to his cancer, and that he would be having significant testing done in July 2015.

10. On or about April 24, 2015, Plaintiff observed a coworker performing a change-over on a machine with the machine doors open. The change-over had begun at an earlier time while Plaintiff was working in another area, and was nearly finished

2

when Plaintiff first observed it. When Plaintiff saw the employee flip the machine handle to start the machine, without removing the LOTO lock, Plaintiff knew that a LOTO had not been performed.

11. A short time later, Plaintiff sent a text to Defendant's Plant Supervision Officer to alert him that the coworker had been working on the machine without following proper LOTO procedures.

12. On or about April 25, 2015, Defendant's Plant Supervision Officer watched the plant security footage and confirmed that the coworker had not properly locked or tagged the machine prior to beginning work on the machine.

13. On or about April 27, 2015, Plaintiff had a meeting with Defendant's Human Resource and Plant Supervision Officers, and Plaintiff was accused of failing to properly perform Supervisory functions when the coworker did not properly LOTO the machine; in the alternative, the Officers asserted Plaintiff should have performed the LOTO on the machine herself.

14. Plaintiff rejected the assertions and reminded the Officers that Plaintiff had not been properly trained in her role as a Supervisor for LOTO procedures. Plaintiff further reminded the Officers that the coworker had been working for several minutes before Plaintiff arrived, was nearly finished with the change-over procedure and the coworker should have performed the LOTO before beginning work.

15. On or about April 28, 2015, Defendant suspended Plaintiff.

16. On or about April 29, 2015, Plaintiff met with Defendant's Human Resource and Plant Supervision Officers and she was terminated. During the termination meeting,

3

Plaintiff again rejected the Officer's assertions and asked to meet with upper management regarding the termination.

17. On May 5, 2015, Plaintiff was granted a meeting with upper management regarding her termination.

18. Defendant's Human Resource and Plant Supervision Officers called Plaintiff on May 8, 2015 to inform her that her termination was still in effect. That same day Plaintiff called the Defendant's corporate office.

19. On May 13, 2015, the corporate office returned Plaintiff's call and informed her that her termination was still in effect.

20. Defendant did not properly train Plaintiff on the appropriate Supervisory LOTO procedures, but instead notified the entire plant of general LOTO procedures with a discreet bulletin notification. Further, Plaintiff was never informed that the consequences for improperly performing Supervisory LOTO responsibilities included termination. On information and belief, other supervisors without spouses who are disabled and/or have used company medical benefits have not been terminated for LOTO infractions.

21. Plaintiff alleges that the proffered reason for termination - - that Plaintiff did not perform LOTO procedures - - was false and pretextual. In reality, Plaintiff had been discriminated against, retaliated against and was terminated on the basis of disability by association; Defendant knew that Plaintiff's husband was suffering from recurring cancer, a serious health condition constituting a disability/perceived disability/record of impairment, which was likely going to require extensive

4

      hospital time and use of Plaintiff's workplace health insurance, as it had in the past. Defendant's actions were in violation of Plaintiff's federally protected rights under the ADA.

22. The Defendant's discriminatory and/or retaliatory conduct was the direct and proximate cause of the Plaintiff suffering the loss of her job and job related benefits including income as well as emotional distress, mental anguish, inconvenience, and other damages and injuries.

23. The Defendant's discriminatory and/or retaliatory conduct, furthermore, was intentional, knowing, willful, wanton, and in reckless disregard of the Plaintiff's federally protected rights under the ADA. Plaintiff is entitled to receive punitive damages against the Defendant.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants for lost wages, compensatory damages, punitive damages, reasonable attorney's fees and costs, and for all other just and proper relief in the premises.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CHRISTOPHER C. MYERS & ASSOCIATES**

/s/Lori W. Jansen
Christopher C. Myers, # 10043-02
Lori W. Jansen, # 19417-57
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802
Telephone:    (260) 424-0600
Facsimile:     (260) 424-0712
Attorneys for Plaintiff